**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-0382-WJM

LYDIA PIPER,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

---

     This is a Social Security Benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Lydia Piper ("Piper") challenges the final decision of Defendant, the

Commissioner of Social Security ("Commissioner"), denying her application for disability

insurance benefits.  The denial was affirmed by an administrative law judge ("ALJ"),

who ruled that Piper was not disabled within the meaning of the Social Security Act.

This appeal followed.

     For the reasons set forth below, the ALJ's decision denying Piper's application

for disability insurance benefits is VACATED and this case is REMANDED for further

proceedings consistent with this order.

## I.  BACKGROUND

     Piper was born on February 12, 1957, and was 55 years old on the alleged onset

date of May 17, 2012.  (Administrative Record ("R.") (ECF No. 11) at 71.)  Piper

graduated from high school and has, in the last nineteen years, worked as a billing

manager and officer coordinator.  (R. at 177.)

Piper applied for disability insurance benefits on December 13, 2012, with a protective filing date of December 12, 2012.  (R. at 146, 184.)  Piper claimed that she is disabled due to the following conditions: severe back injuries (resulting in surgery and spinal injections), depression, leg numbness and sharp pain, low back pain, ruptured discs, and nerve damage.  (R. at 175.)  Her application was denied on June 12, 2013.  (R. at 86.)  Piper's reported pain and functional limitations were further compromised by an "additional back injury sustained in a motor vehicle accident on March 22, 2014."  (R. at 29.)  Piper requested and received a hearing in front of an ALJ, Patricia Hartman.  (R. at 89.)  On August 6, 2014, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.  (R. at 20.)[1]

At step one, the ALJ found that Piper had not engaged in substantial gainful activity since May 17, 2012.  (R. at 26.)

At step two, the ALJ found that Piper suffered from "the following severe impairments: hypertension and status-post L3-4 laminectomy and microdiscectomy with recurrent herniations at L3-4 and L4-5."  (*Id.*)  The ALJ did not find that any other claimed condition was a severe impairment.  (R. at 27.)

At step three, the ALJ found that Piper's impairments, while severe, did not meet

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);  *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

or medically equal any of the impairments listed in the Social Security regulations.  (R. at 27–28.)

Before proceeding to step four, the ALJ assessed Piper's residual functional capacity ("RFC").  The ALJ concluded that Piper has the RFC "to perform light work, except that she needs to be able to sit hourly for 5-10 minutes while remaining on task." (R. at 28.)  Then, at step four, the ALJ concluded Piper could continue to perform her past relevant work as an "office coordinator."  (R. at 32.)

The ALJ's conclusion at step four was, by itself, sufficient to deny Piper's disability application.  *See* 20 C.F.R. § 404.1520(a)(4).  The ALJ nonetheless proceeded to step five and alternatively found that other jobs exist in the national economy that Piper can perform.  (R. at 33.)

Accordingly, the ALJ found that Piper was not entitled to disability insurance benefits.  (*Id*.)  Piper appealed to the Social Security Appeals Council (R. at 13), which denied review (R. at 1).  Piper then filed this action seeking review of the ALJ's August 6, 2014 decision.  (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084.  Evidence is not substantial if it is

overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257,

1261–62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may

neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar*

*v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to

apply the correct legal test, there is a ground for reversal apart from a lack of

substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  ANALYSIS

Piper argues that the ALJ erred by (1) not calling a medical expert to provide an

updated opinion on medical equivalence; (2) improperly basing her durational

requirement finding on her own lay opinion, rather than on the medical evidence; (3)

discounting the opinion evidence of Piper's examining occupational therapist; (4) not

properly discussing the medical opinion evidence of Piper's treating physician; and (5)

not basing her credibility finding in substantial evidence.

### A.    Updated Opinion on Medical Equivalence

Piper argues that the ALJ failed to consult a state agency medical expert to

opine on the issue of medical equivalence of her physical impairments to the listings

pursuant to SSR 96-6p.  (ECF No. 14 at 15.)

SSR 96-6p provides that an ALJ "must obtain an updated medical opinion from a

medical expert . . . . when additional medical evidence is received that in the opinion of

the administrative law judge or the Appeals Council may change the State agency

medical or psychological consultant's finding that the impairment(s) is not equivalent in

severity to any impairment in the Listing of Impairments."  SSR 96-6p, 61 Fed. Reg.

34468 (July 2, 1996).

The ALJ's medical equivalence determination was based in part on the state agency's consultative physician's report.  (R. at 28.)  In the May 7, 2013 report, Dr. Timothy Moser noted that Piper could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in an eight-hour day, and sit without restriction.  (R. at 334.)  The ALJ also considered evidence in the record relating to Piper's subsequent involvement in a motor vehicle accident in March 2014.  (R. at 28.)  To account for the intervening motor vehicle accident, the ALJ found that "some additional restrictions are warranted in terms of her needing to sit hourly for five to ten minutes while remaining on task because of her back condition."  (R. at 31.)

Piper contends that the need for an updated medical opinion was triggered when the ALJ found "that the State agency doctor's opinion was no longer supported."  (ECF No. 14 at 19.)  Specifically, Piper's argument is based on the "ALJ's own finding . . . . that the evidence in the file at the time of her decision required a revision in the State agency doctor's opinion."  (ECF No. 18 at 4.)  The Commissioner responds that the "ALJ explained why the evidence does not show that [Piper]'s impairments met or medically equaled the Listings."  (ECF No. 15 at 9.)  The Commissioner contends that the ALJ gave Dr. Moser's "opinion 'great weight' because it was 'supported by the objective findings' and 'consistent with the record as a whole', but she imposed *additional* restrictions because she was giving [Piper] 'the benefit of the doubt.'"  (*Id*. at 10 (quoting R. at 31)) (emphasis in original.)

The ALJ "is responsible for deciding the ultimate legal question whether a listing is met or equaled."  SSR 96-6p, 61 Fed. Reg. 34468 (July 2, 1996).  Here, the ALJ

found that "no medical expert has opined that the claimant's spinal impairment meets or equals a medical listing." (R. at 28.)  This statement was made after the ALJ considered all of the available evidence, including new evidence stemming from the March 2014 motor vehicle accident.  (*Id*.)  SSR 96-6p does not specify whether and where the ALJ must express, in her opinion, that new evidence may have changed the state agency consultant's medical equivalence opinion.  *See* SSR 96-6p, 61 Fed. Reg. 34466–34468 (July 2, 1996).  In fact, the ALJ here never expressed an opinion that she thought the evidence demanded an updated opinion as to medical equivalence.  (*See* R. at 27–28.)  Moreover, just because the ALJ found that additional restrictions were warranted beyond what the state agency consultant found, does not mean, in her opinion, that the state agency consultant's determination as to medical equivalence has changed.  Accordingly, the Court finds no reversible error as to this issue.

## B.    Duration of Symptoms

Piper argues that the "ALJ impermissibly substituted her own lay judgment for that of a medical expert when she assessed the likely duration of the exacerbation of [her] symptoms after the March 2014 motor vehicle accident." (ECF No. 18 at 4.) Specifically, "[h]er assumption that this problem would improve before March 2015 (12 months after the intervening motor vehicle accident) was based solely on her own lay assessment of the evidence." (ECF No. 14 at 20.)  Further, Piper contends that the ALJ's lay opinion is not substantial evidence, and may not be substituted for a medical expert's opinion.  (ECF No. 18 at 4–5 (citing *Sisco v. United States Dep't Of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir. 1993)).)

The ALJ concluded that "the available evidence to date does not support a finding that the claimant's increase in physical (and mental) symptoms since that time are expected to cause greater functional restrictions than set forth above for the requisite duration of 12 continuous months." (R. at 30.)  The Court is concerned that this may be lay opinion as it is unclear what "available evidence to date" the ALJ is relying upon in making her determination as to the duration of Piper's exacerbated symptoms.  If this is in fact the ALJ's lay opinion, then in the Court's view the ALJ's finding is not supported by substantial evidence in the record and is legally flawed, because an ALJ cannot substitute her lay opinion for that of a medical professional. *See Lax*, 489 F.3d at 1089; *see also Sisco*, 10 F.3d at 744.  Accordingly, the Court will vacate and remand for the ALJ to more fully address the ambiguity in the record on this point.

## C.    Examining Occupational Therapist Opinion

Piper asserts that the ALJ improperly discounted the non-medical source opinion of Ms. Kristine Couch.  Ms. Couch, an occupational therapist, reviewed Piper's medical history and assessed her functional capacity in person over a two-day period following the March 2014 motor vehicle accident.  (R. at 722.)  Ms. Couch found that Piper was "limited to lifting no more than five pounds, could sit for only twenty-one minutes before needing to change position, and could stand for fourteen minutes before needing to change positions."  (ECF No. 14 at 21.)  The ALJ found that the "restrictions given in this report, which essentially limit the claimant to significantly less than sedentary level work, appear based on the claimant's subjective allegations."  (R. at 31–32.)

Piper argues that "per SSR 06-03p, her opinion on functioning is entitled to

7

weight, and the ALJ's evaluation of her opinion must include consideration of the factors cited in 20 C.F.R. § 404.1527(d)."  (ECF No. 14 at 23.)  As to the factors, the Commissioner responds that "there is a difference between what an ALJ must consider and what she must explain."  (ECF No. 15 at 16 (citing *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012)).)

In *Mounts*, the Tenth Circuit noted that "we have held that it is not necessary for the ALJ to address each factor expressly or at length . . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the . . . opinion and the reasons for that weight.'" *Mounts*, 479 F. App'x at 866 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2012)).

The ALJ provided multiple reasons for why she gave Ms. Couch's opinion "little weight."  (R. at 32.)  However, contrary to Piper's argument, the ALJ need not have considered *all* of the factors cited in 20 C.F.R. § 404.1527(d).  Rather, the ALJ's decision to discount Ms. Couch's opinion because it appeared based on Piper's subjective allegations was sufficient in of itself.  *See Rivera v. Colvin*, 629 F. App'x 842, 845 (10th Cir. 2015) (finding it appropriate for the ALJ to consider where the physician got his information and to give the physician's opinion less weight because he relied on the claimant's subjective complaints); *see* also Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007) (concluding that it was proper for the ALJ to give no weight to the physician's opinion because it was based on claimant's subjective report).  Accordingly, the Court finds no reversible error as to this issue.

**D.     Treating Practitioner's Opinion**

Piper asserts that in making her RFC determination, the ALJ failed to discuss or indicate what weight, if any, was given to Piper's treating physician, Dr. Reider.  (ECF No. 14 at 25.)  Dr. Reider treated Piper under the workers' compensation system between June 5, 2012, and December 31, 2012, just prior to and after Piper's laminectomy and microdiscectomy's were performed.  (*Id*.)  During the course of the physician-patient relationship, Dr. Reider found that Piper was unable to work at times, or had limitations including no bending or twisting at the waist, and no lifting/carrying/pushing ten plus pounds.  (*Id*.)  Piper contends that the ALJ's failure to discuss Dr. Reider's opinion is reversible error.  (*Id*. (citing *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)).)  The Commissioner responds that the "AlJ's oversight is not a basis for remand" because "these limitations would not prevent [Piper] from performing her past work or other work as a receptionist."  (ECF No. 15 at 17 (citing *Lane v. Colvin*, 643 F. App'x 766, 769 (10th Cir. 2016)).)

The Court agrees with Piper that the ALJ did not discuss in her order Dr. Reider's opinion at any length, however, the Court is convinced that the ALJ at least considered his opinion.  In making her RFC determination the ALJ noted that she "also considered medical signs and findings and the opinions of the claimant's treating and examining sources."  (R. at 32.)  When an "ALJ indicates [s]he has considered all the evidence our practice is to take the ALJ at [her] word."  *Wall*, 561 F.3d at 1070.  Moreover, the record must only demonstrate that the ALJ considered all the evidence; the ALJ need not discuss every piece of evidence.  *Clifton*, 79 F.3d at 1009.  However, the ALJ *is* required to discuss evidence in cases where she chooses not to rely upon

significantly probative evidence or when considerable evidence is presented that

counters the agency's position. *Id.* at 1010.

Notwithstanding the above proposition, the Court need not resolve whether the

ALJ should have expressly included in her RFC Dr. Reider's limitations on

bending/twisting at the waist and carrying/pushing more than ten pounds, because the

capacity required to do the jobs identified by the ALJ is not contrary to Dr. Reider's

limitations; thus, if this was error, it was harmless. *Lane*, 643 F. App'x at 769. An ALJ's

error is harmless "where, based on material the ALJ did at least consider (just not

properly), we could confidently say that no reasonable administrative fact finder,

following the correct analysis could have resolved the factual matter in any other way."

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

The ALJ determined that Piper is able to perform her past relevant work as an

office coordinator, as defined in the Dictionary of Occupational Titles (DOT), 169.167-

034. (R. at 32.) Additionally, during the hearing before the ALJ, the vocational expert

testified that Piper could perform the job of receptionist, as defined in the DOT,

237.367-038. (R. at 33.) As generally performed, the physical demands of these

occupations are sedentary. *See Selected Characteristics of Occupations Defined in the

Revised DOT 1993 Edition* ("SCODOT"), Part B–Index of Titles; *see also* 1991 WL

647430; 1991 WL 672192. "Sedentary work involves exerting up to 10 pounds of force

occasionally or a negligible amount of force frequently to lift, carry, push, pull, or

otherwise move objects, including the human body. Sedentary work involves sitting

most of the time, but may involve walking or standing for brief periods of time."

10

*SCODOT*, App. C–Physical Demands.  The occupations identified by the ALJ do not

require one to bend/twist at the waist, or push/carry more than ten pounds, and

therefore do not conflict with the limitations found by Dr. Reider.  Because there is no

such conflict, the Court finds that any oversight by the ALJ was harmless error.

## E.      Credibility Determination

Piper asserts that the ALJ did not base her credibility assessment on substantial

evidence.  (ECF No. 14 at 27.)  Piper argues that the ALJ "failed to actually link any

specific piece of evidence to [her] credibility."  (*Id*. at 26.)  Commissioner responds that

"the ALJ gave good reasons for finding [Piper]'s statements unreliable."  (ECF No. 15 at

19.)

"Credibility determinations are peculiarly the province of the finder of fact, and

[courts] will not upset such determinations when supported by substantial evidence."

*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  The ALJ must set "forth the

specific evidence he [or she] relies on in evaluating the claimant's credibility."  *Qualls v.*

*Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Here, the ALJ set forth the factors from

SSR 96-7p and then spent the next few pages identifying evidence from the record that

related to the factors and supported her credibility assessment.  (R. at 29–32.)  *See*

*also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).  For example, the ALJ's discussion

references Piper's June 2013 visit to Dr. Sundland, where she mentioned ongoing back

problems.  (R. at 30.)  However, the ALJ contrasts this with Piper's report to her

physician that she had been exercising daily with an elliptical machine.  (*Id*.)  The ALJ

also references Piper's January 2014 visit to Kaiser Permanente, in which she reported

ongoing back pain.  (*Id*.)  Similarly, the ALJ contrasts this with Piper's report to the physician that she walked two miles a day for exercise.  (*Id*.)  Thus, the Court finds that the ALJ properly considered the relevant factors and the evidence in the record in making her credibility determination.

However, on March 28, 2016, the Commissioner issued a new SSR addressing the evaluation of symptoms in disability claims.  SSR 16-3p, 81 Fed. Reg. 14166 (Mar. 28, 2016).  The new Ruling supersedes SSR 96-7p by "eliminating the use of the term 'credibility' from our sub-regulatory policy . . . . In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."  *Id*. at 14167.  ALJs are now instructed to consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and to evaluate whether the statements are consistent with objective medical evidence and other evidence in the record.  *Id*. at 14169.  In determining whether the individual's symptoms and related limitations are consistent with the evidence in his or her record, the ALJs must explain which symptoms they found consistent or inconsistent and explain how their evaluation of the individual's symptoms led to their conclusion.  *Id*. at 14170.

As Piper correctly notes, SSR 16-3p is now binding on all components of the Social Security Administration.  (ECF 14 at 26) *See also* 20 C.F.R. § 402.35(b) ("These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted.").  Accordingly, on remand, the Court orders the ALJ to assess Piper's subjective statements of her symptoms under the criteria listed under SSR 16-3p.

The Court does not intend by this opinion to suggest the results that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand.  *See Kepler*, 69 F.3d at 391–92 ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 21st day of December, 2016.

BY THE COURT:

William J. Martinez
United States District Judge